IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RALPH EMILE | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| J.L. JAMISON, ET AL. | : | NO. 26-8099 |

**MEMORANDUM**

**Padova, J.** **November 2, 2026**

Petitioner Ralph Emile is a Haitian citizen who entered the United States in October of 2022, without inspection, and was detained, processed, and released. (Pet'n ¶¶ 17-18.) On October 19, 2026, he was taken into custody by Immigration and Customs Enforcement (ICE"), when reporting for a scheduled check-in, and he has since been in immigration custody. (Id. ¶¶ 2, 4, 21.) Emile has filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, seeking his release. For the following reasons, we grant Emile's Petition.

## I. BACKGROUND

Emile, a native and citizen of Haiti, entered the United States near Hidalgo, Texas on October 21, 2022. (Pet'n ¶ 17, Gov't Ex. A, Docket No. 5-1, at 2.) He encountered Department of Homeland Security ("DHS") officers, who detained and processed him, then released him on parole. (Pet'n ¶ 18; Gov't Ex. A at 2.) As a condition of release, he was required to attend periodic check-ins, which he has done dutifully. (Pet'n ¶ 1.) Emile has established a community in the Philadelphia area and recently moved to Camden. (Id. ¶ 18.) He works to support his family, including his wife and young daughter. (Id.) Emile has complied with all the conditions of his immigration release, and has no criminal history. (Id. ¶ 19; Gov't Ex. A at 2.)

On October 19, 2026, Emile arrived for a scheduled check-in at the Philadelphia ICE field office and was taken into custody with no prior notice or opportunity to contest his detention.

(Pet'n ¶ 20.) He was not given any explanation as to why circumstances had changed and now required his detention. (Id.)

A "Record of Deportable/Inadmissible Alien," Form I-213, dated October 19, 2026, states that Emile has been charged with being an alien present in the United States without admission or parole,[1] see 8 U.S.C. § 1182(a)(6)(A)(i), and adds that he is "subject to President Donald Trump's [January 20, 2025] Executive Order, titled 'Protecting the American People Against Invasion.'" (Gov't Ex. A at 2.) The Form I-213 indicates that upon Emile's arrest, he was served with an arrest warrant as well as a Notice of Custody Determination, but the Government has not submitted into the record the purported Notice of Custody Determination. (Gov't Ex. A at 2; see also Gov't Ex. B, Docket No. 5-2.) According to the Form I-213, Emile was taken into custody "[d]ue to available bed space." (Gov't Ex. A at 3.) A Notice to Appear, also dated October 19, 2026, reiterates that Emile was charged with being subject to removal pursuant to 8 U.S.C. § 1182(a)(6)(A)(i), and schedules a video removal hearing for October 30, 2026. (Gov't Ex. C, Docket No. 5-3.) Emile is currently being held at the Philadelphia Federal Detention Center. (Pet'n ¶ 21.) He filed his now-pending habeas petition on October 22, 2026.

## II. LEGAL STANDARD

We are empowered to grant habeas relief to a petitioner who is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). This includes the power to grant relief to noncitizens, because "[t]he writ of habeas corpus has always been available to review the legality of Executive detention," and it has "regularly [been] invoked on behalf of noncitizens, particularly in the immigration context." INS v. St. Cyr, 533 U.S. 289, 305 (2001) (citations omitted). The burden is on the petitioner to show that he is entitled to habeas

---

[1] Emile's Form I-213 states that when he arrived in the United States in 2022, he was "paroled due to lack of bed space." (Gov't Ex. A at 2.)

relief. Brown v. Cuyler, 669 F.2d 155, 158 (3d Cir. 1982) (citation omitted).

## III. DISCUSSION

Emile seeks his immediate release from custody, arguing that his re-detention without a pre-deprivation hearing or any showing that he is either a flight risk or danger to the community violates his procedural and substantive due process rights under the Fifth Amendment, as well as the Accardi doctrine, which requires governmental agencies to follow their own rules.[2] The Government argues that we should deny Emile's Petition, because Emile has been lawfully detained pursuant to 8 U.S.C. § 1226(a), has not exhausted his administrative remedies, and is not entitled to a pre-deprivation bond hearing. It also argues that there is no substantive due process right to be free from immigration detention during removal proceedings, and that the Accardi doctrine does not provide a path to relief because ICE has statutory and regulatory authority to detain noncitizens during removal proceedings.

### A. Detention under § 1226(a) and Exhaustion of Administrative Remedies

Under § 1226(a), "[o]n a warrant issued by the Attorney General," a noncitizen "may be arrested and detained pending a decision on whether [he] is to be removed from the United States." 8 U.S.C. § 1226(a). The Attorney General "may continue to detain" the noncitizen or release him on bond or conditional parole. Id. § 1226(a)(1)-(2). The INA's implementing regulations clarify the standard by which a decision should be made to detain or release a noncitizen, stating that "[a]ny officer authorized to issue a warrant of arrest may, in the officer's discretion," release a qualifying noncitizen if the noncitizen "demonstrate[s] to the satisfaction of the officer that such

[2] Leslie v. Att'y Gen. of U.S., 611 F.3d 171, 175 (3d Cir. 2010) (discussing "the long-settled principle that rules promulgated by a federal agency that regulates the right and interests of others are controlling on the agency," a doctrine first applied in the immigration case of United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 268 (1954)) (additional citation omitted).

release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). This initial custody determination is then subject to review by an immigration judge in a bond hearing and, subsequently, by the Bureau of Immigration Affairs. See 8 C.F.R. § 1236.1(d)(1) ("After an initial custody determination by the district director, . . . the [noncitizen] may . . . request amelioration of the conditions" by application to an immigration judge.); 8 C.F.R. § 1236.1(d)(3)(i) (providing for appeal of an immigration judge's custody determination to the BIA). At the bond hearing, which is designed to allow for a "redetermination of custody conditions," the noncitizen's entitlement to release again depends on his ability to show that "release would not pose a danger to other persons or to property" and that he is likely to appear for future proceedings. 8 C.F.R. § 1003.19(h)(3).

The Government maintains that we should dismiss Emile's Petition based on failure to exhaust administrative remedies because Emile has not yet secured a bond hearing to review his custody.[3] "Although there is no statutory exhaustion requirement attached to § 2241, [the Third Circuit has] consistently applied an exhaustion requirement to claims brought under § 2241." Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000) (citation omitted); see also Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996) (citations omitted). When exhaustion is not statutorily required, it is a matter of "sound judicial discretion." Cerro Metal Prods. v. Marshall, 620 F.2d 964, 970 (3d Cir. 1980) (citations omitted). In exercising that discretion, we will excuse exhaustion "if administrative remedies would be futile, if the actions of the agency clearly and

[3] The Government has not provided us with a copy of Emile's Notice of Custody Determination, the form that advises a noncitizen that he will be detained, informs him of his right to a bond hearing, and documents whether the noncitizen has requested a bond hearing. Indeed, while the Government represents in its memorandum that ICE offered Emile the opportunity to request a bond hearing, and the Form I-213 states the same, no Notice of Custody Determination has been produced and the Government does not provide any information as to how Emile responded to that purported offer. (Gov't Mem. at 2 & Ex. A at 3.)

unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable injury." Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988) (citing Babcock & Wilcox Co. v. Marshall, 610 F.2d 1128, 1138 (3d Cir. 1979)).

We conclude that exhaustion is not required in this case because the administrative remedies that the Government offers to Emile are inadequate to address the deprivation of liberty that has already occurred. The Government appears to take the position that, once removal proceedings are commenced, it may detain a noncitizen without consideration of whether the noncitizen poses any danger to the community or a risk of flight. (See Gov't Mem. at 6.) In the Government's view, as we understand it, pre-bond-hearing detention cannot be questioned because the DHS District Director has unfettered "discretion . . . [to] determine[e] whether to detain or release [the noncitizen] on bond until removal proceedings are complete." (Gov't Br. at 6 (citing 8 C.F.R. §§ 236.1(b), (c)(8).) The administrative remedies that the Government is therefore offering to Emile are not designed to address the custody that is at issue, that is, Emile's pre-bond-hearing custody that is untethered from any consideration of a noncitizen's risk of flight or danger to the community. Accordingly, we conclude that the administrative remedies are futile in that they will not address and cannot remedy the claimed infringement of Emile's constitutional liberty rights occurring prior to any eventual bond hearing. See Dos Reis v. McShane, Civ. A. No. 26-3775, 2026 WL 1746649, at *3 (E.D. Pa. June 17, 2026) (finding administrative exhaustion is not required where "[a] later bond hearing [would] not necessarily cure the alleged constitutional violation that preceded it" (citation omitted)); see also Melendez-Guzman v. Jamison, 2026 WL 2983704 (Oct. 5, 2026 ("[A]dministrative processes . . . that may become available in the future would be futile in remedying Petitioner's alleged present and ongoing

constitutional deprivation." (citations omitted)).

For these reasons, we exercise our discretion to excuse Emile from any obligation to exhaust his administrative remedies and decline to dismiss the Petition for failure to exhaust.

**B. Procedural Due Process**

Emile asserts that his Fifth Amendment procedural due process rights have been violated by his detention without an individualized explanation or determination of the need to detain him. The Fifth Amendment provides that no person shall "be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Among other things, "[t]he Fifth Amendment entitles aliens to due process of law in deportation proceedings." Borbot v. Warden Hudson Cnty. Corr. Facility, 906 F.3d 274, 275 (3d Cir. 2018) (quoting Reno v. Flores, 507 U.S. 292, 306 (1993)).

Based on the statutory and regulatory law set forth above, courts in this District have concluded that the Government is required to make an "individualized custody determination" when it arrests a noncitizen, taking into consideration whether the noncitizen poses a danger to the community and whether the noncitizen is a flight risk. See, e.g., Basboga v. Jamison, Civ. A. No. 26-6694, 2026 WL 3033623, at *5 (E.D. Pa. Oct. 8, 2026) (citations omitted); Hernandez v. Jamison, Civ. A. No. 26-7607, 2026 WL 3034460, at *3 (E.D. Pa. Oct. 9, 2026) (stating that a noncitizen detained under § 1226 has a "right to an individualized detention determination" (quotation omitted)); Dos Reis, 2026 WL 1746649, at *4 ("Because Petitioner is detained under § 1226(a), ICE had discretion to detain him or release him on bond or conditional parole, but it had to exercise that discretion through an individualized custody determination.") Here, there is no indication in the record that the Government made any such individualized custody determination with regard to Emile. Rather, the documents in the record disclose only that Emile was taken into

custody, after years of uneventful release, "[d]ue to the availability of bed space." (Gov't Ex. A at 3.) The fact that DHS had developed capacity in its detention facilities, making room to hold Emile (or any other noncitizen), bears no relation to the individualized custody analysis that § 1226(a) requires, which asks whether a noncitizen is a danger to the community or a flight risk, and suggests no other individualized basis for subjecting Emile to custody. See Basboga, 2026 WL 3033623, at *5 (noting that detaining a noncitizen because of "[t]he availability of bed space . . . contains no connection to whether [the noncitizen] is a danger to community or a flight risk, nor does it address any other issue that might impact ICE's exercise of its discretion under the statute"); see also Michilashvili v. Jamison, Civ. A. No. 26-7686, 2026 WL 3182160, at *3 (E.D. Pa. Oct. 23, 2026) (citing Basboga, 2026 WL 3033623, at *5; Lopez-Abello v Jamison, Civ. A. No. 26-6752, 2026 WL 2981935, at *2 (E.D. Pa. Oct. 5, 2026)). There is therefore no indication in the record that any individualized custody determination was made in connection with Emile's initial or continued detention. We thus conclude that Emile's rights under the statute were violated.

To determine whether Emile's custody in the absence of any individualized custody determination violated his Fifth Amendment procedural due process rights, we consider the three factors set forth in Mathews v. Eldridge, 424 U.S. 319 (1976), which are "(1) the interest at stake for the individual noncitizen; (2) 'the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards'; and (3) 'the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'" B.C. v. Att'y Gen. United States, 12 F.4th 306, 315 (3d Cir. 2021) (quoting Mathews, 426 U.S. at 335).

Emile's interest at stake is his interest in physical liberty. Indeed, "the most elemental of liberty interests [is] the interest in being free from physical detention by [the] government." Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004) (citations omitted); Zadvydas v. Davis, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." (citation omitted)). "[I]t is clear that commitment for *any* purpose constitutes a significant deprivation of liberty that requires due process protection." Hamdi, 542 U.S. at 530 (quoting Jones v. United States, 463 U.S. 354, 361 (1983)). We therefore conclude that Emile's liberty interest here is of paramount importance.

We also find that, under the circumstances presented, where no individualized custody determination has been made, the risk of erroneous deprivation is high. See Buele-Marocho v. Warden Philadelphia FDC, 189 F.4th 287, 307 (3d Cir. 2026) ("[T]he absence of an opportunity for a neutral decisionmaker to assess whether Petitioners are dangerous, or flight risks, presents a high risk of erroneously depriving Petitioners of their liberty interest." (citations omitted)). The Government argues that the availability of a bond hearing before an immigration judge and a subsequent appeal to the BIA protects against this risk. However, the promise of a bond hearing in the future does nothing to guard against unwarranted deprivation of a noncitizen's liberty in the days or weeks preceding that hearing. Moreover, in this case, the Government has not even submitted any Notice of Custody Determination evidencing that it has advised Emile of his right to a bond hearing and provided him with an opportunity to request one. See supra note 3. We therefore conclude that the facts of this case demonstrate an unacceptable risk of erroneous deprivation.

Finally, we acknowledge that the Government has a legitimate interest in protecting the

community from danger and ensuring that noncitizens appear at their future immigration proceedings. Zadvydas, 533 U.S. at 690 (recognizing the Government's interests in "ensuring the appearance of aliens at future immigration proceedings" and "[p]reventing danger to the community" (alteration in original) (record citation omitted)). However, the Government argues that it must have discretion to detain any noncitizens "whom [it] believes should be detained." (Gov't Mem. at 11.) We have already rejected this assertion of unfettered discretion, which fails to appropriately account for noncitizens' liberty interests and the individualized custody determination to which they are entitled. Thus, where, as here, the Government does not even contend that Emile is a flight risk or a danger to the community, we cannot give weight to these otherwise legitimate concerns.

On balance, therefore, the Mathews factors weigh in favor of finding a procedural due process violation. We therefore conclude that Emile's procedural due process rights have been violated by his detention without the benefit of an individualized custody determination.[4]

## III. CONCLUSION

Having found that Emile is being held in custody in violation of his Fifth Amendment procedural due process rights, the proper remedy is release. See Munaf v. Geren, 553 U.S. 674, 693 (2008). We therefore grant Emile's habeas petition and order that he be released from custody.

BY THE COURT:
/s/ John R. Padova, J.

John R. Padova, J.

[4] Because we decide this case on procedural due process grounds, we do not reach Emile's other claims pursuant to substantive due process and the Accardi doctrine.